UNITED STATES of America, Plaintiff,

v.

125.07 ACRES OF LAND, MORE OR LESS SITUATED IN the TOWNS OF TRURO AND WELLFLEET, COUNTY OF BARNSTABLE, COMMON-WEALTH OF MASSACHUSETTS, Thomas W. Rich, et al., Defendants.

Civ. A. No. 73–1837–Z(C).
Tract No. 25T–5741.

United States District Court,
D. Massachusetts.

Jan. 2, 1991.

Walter Postula, Land Acquisition Section, Lands & Natural Resources Div., Dept. of Justice, Washington, D.C., James N. Gabriel, U.S. Atty., Frank Libby, and Joan Milstein, Asst. U.S. Attys., for U.S.

John D. Hallisey, Orleans, Mass., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

In 1973, the United States filed a complaint in condemnation ("Action"), encompassing thirty tracts in what is now known as the Cape Cod National Seashore. The only tract at issue in this action is Tract Number 25T–5741 ("Tract"). The United States seeks to have a judgment entered vesting title in the United States as to the entirety of the Tract. Hersey D. Taylor ("Taylor") claims an interest in a piece of land known as Lot YY, a portion of which is coextensive with the Tract. In October, 1990, this action was tried before this Court without a jury.

## I. FINDINGS OF FACT

A. The Condemnation Action

1. On June 12, 1973, the United States filed in the United States District Court for the District of Massachusetts a complaint in condemnation encompassing thirty tracts of land in what is now known as the Cape Cod National Seashore.

2. Among these tracts is one identified as Tract 25T–5741.

3. There are two tracts located immediately north of the Tract, as it is depicted upon Cape Cod National Seashore Map 202–25. These tracts are numbered 25T–4098 and 25T–5712.

4. The United States acquired tract 25T–4098 through a direct purchase from the record title holder, Marion E. Taylor, as is set forth within a deed dated November 12, 1965. The deed was filed within the

Barnstable County Registry of Deeds on December 7, 1965, and recorded at Book 1320, Page 369.

5. Tract 25T–5712, which is located to the east of 25T–4098, was acquired by the United States by condemnation as is shown within a certain Final Judgment of Condemnation entered by the Court (Skinner, J.) on June 6, 1975, in C.A. No. 73–780–S, such action known as *United States of America v. 177.51 Acres of Land, More or Less, situated in the Towns of Eastham, Truro and Wellfleet, etc.*

6. Before commencing this Action, the United States caused to have conducted a title search which showed that title to the Tract was in "Persons Unknown."

7. On June 12, 1973, the United States filed its lis pendens as to all of the tracts of land at issue in the Action, including the Tract. This lis pendens was recorded on June 20, 1973 with the Barnstable County Registry of Deeds at Book 1882, Page 156.

8. On April 29, 1974, the United States filed its Certificate for Service by Publication as to all of the land at issue in the Action, including the Tract.

9. On July 2, 1974, the United States filed its Certificate of Publication in this Court. Specifically, the Certificate of Publication reflected publication, pursuant to Federal Rules of Civil Procedure 71A, on June 14, 1974, June 21, 1974, and June 28, 1974, in the Cape Cod Standard Times, a newspaper having a general circulation in Barnstable County, Massachusetts.

B. Petition of Hersey D. Taylor

10. On July 17, 1985, Hersey D. Taylor filed what was called a Petition of Hersey D. Taylor for Determination of Title ("Petition").

11. The Petition filed by Taylor referred to a land survey sketch made by Schofield Brothers, Inc., dated August 9, 1977, which shows a piece of land known as Lot YY. The Schofield Bros. sketch is attached hereto and made a part hereof.

12. Lot YY is superimposed on several tracts in the area. A portion of Lot YY consisting of 29,800 square feet is coexten-

sive with the Tract in question. This portion that is coextensive with the Tract will be referred to as the "Parcel." The Parcel is located in the middle portion of the Tract at issue. That portion of the Tract to the west of the Parcel will be referred to as the "Front Lot." The Front Lot fronts on Old County Road. That portion of the Tract located to the east of the Parcel will be referred to as the "Back Lot."

13. On July 1, 1986, this Court allowed Taylor's Petition establishing for purposes of this trial Taylor's claim of an interest in Lot YY.

14. Taylor's claim of an interest in Lot YY arises out of the fact that he is an heir of John Elliott, who held a deed to Lot YY which was recorded at the Barnstable County Registry of Deeds, Book 166, Page 291.

15. Taylor has visited the Tract.

16. Taylor has taken no other actions on the Tract to enclose it, to reduce it to cultivation or otherwise to change the nature of the land in any way.

C. Real Estate Taxes

17. The Office of Collector of Taxes for the Town of Truro received no payment for real estate taxes as to the Tract for tax years 1977 and 1978 because property taxes on the Tract for those years were abated in full.

18. Real estate taxes as to the Tract for tax year 1979 were neither assessed nor received because such assessment was made to the United States of America, and thus appeared in the "exempt" section of the records of the Office of Collector of Taxes for the Town of Truro.

19. On February 18, 1982, the Town of Truro, Massachusetts, filed its Notice of Appearance and Claim for Unpaid Taxes as to the Tract. The Town of Truro's Notice claimed damages for taxes owed and unpaid, plus interest, for the assessed taxable periods of: Tax Title (1972); 1980; 1981; and 1982.

20. In 1987, following the filing of the Petition, Taylor made a lump sum payment of $2,383.56 for taxes assessed and demanded on the Tract during the tax years 1972 to 1987, and obtained an Instrument of Redemption in his name from the Town of Truro. The Instrument of Redemption was recorded in the Barnstable County Registry of Deeds, Book 5916, Page 156.

21. At some point after paying the taxes, Taylor approached the Town of Truro and asked to be identified as the person to be assessed taxes on the Tract. The Town of Truro rejected this request and instead assessed the Tract to "Owners Unknown."

D. Valuation

22. The Tract contains approximately 2.6 acres of undeveloped woodland situated in the Town of Truro, Barnstable County, Massachusetts.

23. The Tract is covered with bayberry bushes, scrub pines and ground cover.

24. The Tract is a narrow one, approximately 84 feet wide and 1,370 feet long.

25. The Tract has frontage on its easterly side of approximately 84 feet on Old County Road, a paved public road located in the Town of Truro.

26. Beginning at the part of the Tract fronting on Old County Road, the land rises sharply to the top of a hill which is at a distance of approximately 384 feet back from the road. The land starts at a forty degree angle and the average incline is approximately twenty degrees.

27. Public electric and telephone utilities are available to the Tract at Old County Road.

28. The Tract is not within a subdivision.

29. The Front Lot of the Tract consists of approximately 50,500 square feet and has a distant view of the Cape Cod Bay.

30. The Front Lot is approximately 600 feet long.

31. Of the three lots contained in the Tract, the Front Lot is the only one that is buildable.

32. The highest and best use of the Front Lot is for residential use as a site for a single family dwelling.

33. The Parcel, that portion of Lot YY that bisects the Tract, consists of approximately 29,800 square feet.

34. The Parcel is approximately 355 feet long.

35. The Parcel does not have frontage on, or access to, any public, private or improved way.

36. The Parcel is not a buildable lot.

37. There is no view of the water from the Parcel without leveling trees on the Front Lot.

38. The Back Lot consists of approximately 33,000 square feet.

39. The Back Lot is approximately 395 feet long.

40. There is an unimproved woods road adjacent to the east of the Back Lot which is not suitable for frontage.

41. The Back Lot is not a buildable lot.

42. The Front Lot is the only portion of the Tract containing a buildable lot, and therefore, it is the only portion of the Tract with any substantial value.

## II. CONCLUSIONS OF LAW

■■ In a condemnation action, a party claiming an interest in the land to be condemned bears the burden of proving his or her entitlement to compensation as well as the amount of damages. *United States v. 429.59 Acres of Land,* 612 F.2d 459, 462 (9th Cir.1980); *United States v. Evans,* 380 F.2d 761, 762 (10th Cir.1967). Only that individual who meets the burden of establishing an ownership interest in the property at the time of taking is entitled to receive just compensation. *United States v. Dow,* 357 U.S. 17, 20–21, 78 S.Ct. 1039, 1043–44, 2 L.Ed.2d 1109 (1958). By virtue of this Court's allowance of the Petition of Hersey D. Taylor for Determination of Title, Taylor has, for purposes of this action, established his status as an heir of John Elliott with respect to Lot YY. Consequently, he has established that he has a compensable interest in the amount awarded as just compensation for the Parcel, that

portion of Lot YY that is coextensive with the Tract.

■ Mr. Taylor, however, asserts an ownership interest in the entire Tract, and not just the Parcel. In determining the scope of a party's interest in the condemned property, a court will apply the law of the state in which the property is located. *United States v. 79.31 Acres of Land Situated in the Towns of Truro, Wellfleet and Eastham,* 717 F.2d 646, 647–48 (1st Cir.1983); *United States v. Certain Property Located in the Borough of Manhattan, City, County and State of N.Y.,* 306 F.2d 439, 444 (2d Cir.1962). Thus, this Court turns to Massachusetts law to evaluate Taylor's claim of ownership in the whole Tract.

■ Taylor argues that although he does not have title, he has a possessory interest in the Tract.[1] Under Massachusetts law, possessory title has been held sufficient to entitle the possessor to compensation when faced with a taking by a public authority. *United States v. 79.31 Acres of Land,* 717 F.2d 646, 649 (1st Cir.1983); *United States v. Certain Land Located in the County of Barnstable,* 314 F.Supp. 1372, 1375 (D.Mass.1970); *Andrew v. Nantasket Beach R.R.,* 152 Mass. 506, 507, 25 N.E. 966 (1890); *Chandler v. Jamaica Pond Aqueduct Corp.,* 125 Mass. 544, 547 (1878); *Hawkins v. County Comm'r of Berkshire,* 84 Mass. (2 Allen) 254, 257 (1861); *State Lunatic Hosp. v. County of Worcester,* 42 Mass. (1 Met.) 437, 439 (1840). As explained by one authority on eminent domain:

> [I]t is generally held that in condemnation proceedings under authority of law, proof of possession under claim of title will be treated as *prima facie* evidence of ownership in fee, and will be sufficient to entitle the person in such possession to receive the compensation awarded for the land, if no one showing a better title lays claim to it.

2 Nichols' The Law of Eminent Domain § 5.02[3] (1978). Possessory title is partic-

---

1. Taylor correctly makes no attempt to argue that he has title to the Tract by way of adverse

possession, as he clearly does not meet the requirements under Massachusetts law.

ularly significant in a case such as the present one where Taylor is the sole claimant to the Tract. *See 79.31 Acres of Land*, 717 F.2d at 648; *Certain Land Located in the County of Barnstable*, 314 F.Supp. at 1376.

Although Massachusetts recognizes possessory title, Mr. Taylor has failed to demonstrate a possessory interest in the entirety of the Tract. First, the typical case awarding compensation to a claimant who has merely a possessory interest usually involves a claimant who has a deed, albeit defective, to the property being condemned. *79.31 Acres of Land*, 717 F.2d at 649; *see Certain Land Located in the County of Barnstable*, 314 F.Supp. at 1375. Mr. Taylor admittedly has no deed to the Tract. He in fact claims only the Parcel, not the entire Tract, as an heir of John Elliott, who held a deed to Lot YY. A claimant in *79.31 Acres of Land* made an argument similar to that of Taylor. He argued that as a holder of title as a cotenant, he had the best title to the entirety of the tract at issue, and therefore, that he should receive compensation for the total value of the property. The court rejected this argument. The court explained that "[Petitioner] bases his claim on a chain of title which clearly demonstrates the limited extent of his ownership [as a cotenant] and so '[h]e is limited in his rights to the title gained by conveyances to him.'" 717 F.2d at 648 (quoting *Barnes v. City of Springfield*, 268 Mass. 497, 512, 168 N.E. 78 (1929)). Likewise, Taylor's interest in this case is limited by his claim of heirship through John Elliott to the Parcel.

█ Second, even ignoring Taylor's lack of a deed to the Tract, he has not demonstrated sufficient acts of possession to establish a possessory interest in the Tract. The acts of possession required to establish possessory title to a woodland are less than if the land is more developed. *See 79.31 Acres of Land*, 717 F.2d at 649. Nonetheless, some acts are necessary. Thus, in

*79.31 Acres of Land*, the court held that the sole claimant to a half interest in the locus established a possessory interest by planting trees, hunting, post-holing, commissioning a survey, and paying taxes for each of the fifteen years prior to the condemnation action. *Id.* Likewise, in *Certain Land Located in the County of Barnstable*, the petitioner, who held a defective deed to the locus, demonstrated her possessory title by showing that since 1958, she had made visits to the land, her relatives had hunted on the land at her suggestion, and she had paid the taxes assessed for the years 1958 through 1967. Except for the tax years 1963 through 1967, these taxes were paid in the year assessed.[2]

Mr. Taylor's purported acts of possession do not reach this same level, a level which is necessary to establish a possessory interest in the entirety of the Tract. First, Mr. Taylor paid the taxes in one lump sum. He did not even do this until 1987, well after the commencement of this condemnation action. Mr. Taylor places much emphasis on the fact that he received an Instrument of Redemption upon paying the taxes. He produced no evidence at trial, however, to show that he did anything beyond merely paying in one lump sum the amount due to receive this Instrument. Second, Mr. Taylor's acts of possession consisted of what he called "visits" to the Tract. The only visit specifically described during his testimony, however, was made in connection with having the Tract appraised for this trial. These few acts taken recently fail to demonstrate that Taylor has a possessory interest in the whole of the Tract.

█ Having determined the scope of Taylor's interest, the next step is the valuation of the Tract and the Parcel, beginning first with the Tract. Given this Court's ruling at trial, and elaborated upon herein, that Taylor did not have a claim to the entirety of the Tract, this Court only heard the testimony of the appraiser hired by the

---

**2.** The court explained that "Taxes assessed to Binda after his deed was recorded [in 1958] were paid by petitioner's father, who also redeemed a tax title acquired by the town for non-payment of taxes for the years 1963

through 1967." Given that the tax title was acquired for nonpayment for the years 1963 through 1967, it can be inferred that the taxes for 1958 through 1962 were paid in the year assessed.

United States regarding the value of the whole Tract. The appraiser utilized the Sales Comparison Approach to estimate the market value of the Tract. I find that the appraiser correctly treated the Tract as a lot, and therefore concluded that it had less potential than acreage. Such is the case because acreage is bought for subdivision into several lots. The Tract, on the other hand, cannot be subdivided in light of the appraiser's testimony and this Court's finding that the woods road at the rear of the Tract does not constitute adequate frontage.

Having determined that the Tract should be treated as a lot, the appraiser next examined the sale of twenty comparable lots in Truro. He then narrowed these down to eight lots, arriving at an initial value of 89,000 dollars. This Court finds that he properly adjusted downward to $80,100 in order to reflect the fact that individual lots, such as the Tract, sell for approximately ten percent less than lots within a subdivision. Furthermore, the appraiser deducted an additional $9,200 to account for the cost of building a driveway up the hill from Old County Road. Based on this expert testimony as to comparable sales in Truro, the Court concludes that the fair market value of the Tract at the time of trial was $73,000.

Having established the value of the entire Tract, it is now necessary to determine the amount of just compensation to be awarded Taylor for the Parcel. As stated previously in the Findings of Fact, this Court has determined that the Parcel consists of approximately 29,800 square feet. The Parcel is not a buildable lot as it does not have any frontage on a public, private or improved way, and thus, is landlocked. Furthermore, the Parcel does not have a water view without leveling trees on the Front Lot, a lot in which Taylor has no interest. For these reasons, the government's expert concluded that the Parcel represents nominal value only, namely, $1,000. At trial, Taylor's appraiser testified that the Parcel had a fair market value of $26,000. On cross examination, however, the appraiser conceded that this value was predicated on there being access to the Parcel through the north. In fact, he agreed that without such access, the Parcel would represent nominal value only. Having determined that the Parcel does not have access to a suitable road, this Court concludes that the fair market value of the Parcel is $1,000.

Taylor argues that the amount of just compensation for the Parcel should reflect so-called severance damages. It is true that in the case of a partial condemnation or taking, the owner is entitled to compensation not only for that portion taken, but for the depreciation in the value of that portion which is not taken. *Baetjer v. United States*, 143 F.2d 391, 394 (1st Cir.), cert. denied, 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618 (1944); *United States v. 33.5 Acres of Land, More or Less, in the County of Okanogan, State of Wa.*, 789 F.2d 1396, 1398 (9th Cir.1986). Thus, Taylor argues that he is entitled to be compensated for the diminution in value of those portions of Lot YY that are being severed by virtue of the United States' condemnation of the Parcel. Those parts being severed, he argues, are the piece of Lot YY to the south of the Parcel, and the northernmost piece of Lot YY.

The burden of proving severance damages rests on Taylor. *See Georgia–Pacific Corp. v. United States*, 640 F.2d 328, 337, 226 Ct.Cl. 95 (1980); Nichols, *supra*, at §§ 12:12[1], 14:03[2]. There is a two-part test that Taylor must meet in order to establish his entitlement to severance damages. First, he must show that the land which has been condemned is part of an integrated whole, in terms of use and in terms of ownership. *57.09 Acres of Land*, 706 F.2d 280, 281 (9th Cir.1983). Second, he must demonstrate that the value of the remaining land has been diminished as a result of the condemnation. Nichols, *supra*, at § 12:02[2].

By virtue of this Court's allowance of Taylor's Petition for Determination of Title, Taylor has established that he has a compensable interest in the Parcel. This interest in the Parcel, a piece of land which has been assessed to "owners unknown,"

falls far short of meeting Taylor's burden of proving his right to severance damages. The admission into evidence of the Schofield Brothers' map which includes Lot YY does not overcome this burden. The map itself does not establish who has title to the various tracts upon which Lot YY is superimposed. For example, Taylor clearly can claim no interest in Tract 25T–5712, a tract which was long ago condemned by the United States. Although Taylor argued at trial that he has some interest or right of way to the north through tract 25T–4098, a tract purchased by the United States in 1965, there was nothing produced at trial to establish such a right of way. Without access to the north, Taylor would have no claim to severance damages as to the southern portion of Lot YY, assuming he had title in that southern portion.

Counsel for Taylor stated during trial that there is currently pending in federal court another action which purportedly will determine the status of Lot YY. The nature and status of this proceeding is unclear. Certainly, an adjustment in the award of just compensation reflecting severance damages could not be determined until the proceeding pending regarding YY is concluded. An award for severance damages is also inappropriate as Taylor has not demonstrated that he has fee title to the land he alleges is being severed and not purely a monetary claim to damages. Thus, Taylor has failed to meet the requirements for establishing a right to severance damages.

For all of the reasons stated above, title to the Tract should vest in the United States and Hersey D. Taylor should receive just compensation for the Parcel as well as compensation for taxes paid on the Tract.

Order accordingly.

## ORDER

In accordance with the Findings of Fact and Conclusions of Law filed on this date, it is hereby ORDERED:

1. Title to Tract 25T–5741 shall vest in the United States upon deposit of $73,000 within the Registry of this Court.

2. Judgment in favor of Hersey D. Taylor in the amount of $1,000 as just compensation for the Parcel, and $2,383.56 reflecting the amount paid in taxes.